IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JACK FOSTER OUTTEN | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. No. 98-785-SLR |
| | ) | |
| ROBERT E. SNYDER and M. JANE BRADY, | ) ) ) | |
| | ) | |
| Respondents. | ) | |

**PETITIONER JACK FOSTER OUTTEN'S REPLY TO RESPONDENTS' MEMORANDUM IN RESPONSE TO APPLICATION FOR CERTIFICATE OF APPEALABILITY**

Petitioner Jack Foster Outten ("Petitioner" or "Outten"), by and through his undersigned counsel, submits this Reply to Respondents' Memorandum in Response to Application for Certificate of Appealability (the "Response") (D.I. 123), and respectfully represents as follows:

**Preliminary Statement**

Petitioner agrees that the "standard" for determining whether a certificate of appealability should issue is well established and need not be the subject of further examination.[1] *See Tennard v. Dretke*, -- U.S. --, 124 S.Ct. 2562, 2569 (2004) (stating that a certificate of appealability should issue if "[r]easonable jurists could debate that the outcome of the petition should have been different or that the issues were adequate to deserve encouragement to proceed further."). This Reply instead focuses on the merits of each claim raised by Petitioner and whether each of such claims is deserving of a certificate of appealability.

---

[1] A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

With one exception, Respondents would have this Court deny the issuance of a certificate of appealability arguing, largely, that this Court's conclusions are not debatable. *See e.g.*, Response at 9-10. To that end, Respondents appear to ignore or discount the arguments advanced by Petitioner in his petition and supporting papers, all of which demonstrate the "debate" over the facts of this case, as well as the debate over the various court interpretations and application of those facts under the law.

Regardless of the opposing perspectives, Respondents cannot ignore is that this is a capital case. As the Supreme Court has admonished time and time again, "death is different". *See Caldwell v. Mississippi*, 472 U.S. 320, 329 (1985 ("[T]he qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination"); *Gardner v. Florida*, 430 U.S. 349, 357-58 (1977) ("Death is a different kind of punishment from any other which may be imposed in this country . . . . It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion."). *See also, Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) ("As the Supreme Court has repeatedly stated, however, 'death is different.'").

The potential imposition of the death penalty compels greater scrutiny by the courts to ensure that there has been no deprivation of a constitutional right and, more importantly, that an individual's life is not precipitously and improperly taken. Contrary, therefore, to the Respondents' vague suggestion, the nature of the penalty itself (i.e., death) <u>should</u> be considered in determining whether to issue a certificate of appealability. *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)("In a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate of probable cause, but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate.") Any residual doubts over whether

Petitioner has met the standard for a certificate of appealability should be resolved in Petitioner's favor. *See id*. *See also Valerio v. Crawford*, 306 F.3d 742, 767 (9th Cir. 2002) ("Because this is a capital case, we resolve in Valerio's favor any doubt about whether he has met the standard for a COA.").

Against this backdrop, this Court should issue a certificate of appealability on each of Petitioner's claims. The Court need not go so far as to conclusively determine and find that each of Petitioner's claims is of merit. Rather, the Court need only determine that reasonable jurists would find it *debatable* whether the petition states a valid claim of the denial of a constitutional right. *See Slack v. McDaniel*, 529 U.S. 473 (2000). On the record before this Court, and as explained *seriatim* for each of Petitioner's claims, Petitioner respectfully submits that he satisfies this standard and, therefore, a certificate of appealability should issue for each claim.

### Petitioner's Claims

**1.     Investigation of Mitigation Evidence**. Respondents acknowledge and concede that a certificate of appealability should issue on this claim. *See* Response at 8. Thus, Petitioner need not respond on this claim.

**2.     Failure to Seek Severance of Penalty Hearing**. Respondents dedicate just one paragraph to Petitioner's claim that his trial counsel rendered ineffective assistance of counsel by failing to seek severance of the penalty hearing. *See* Response at 9. Moreover, in summary fashion, Respondents maintain that "this Court's conclusion that the state courts reasonably applied Supreme Court precedent (i.e., *Strickland*) is not debatable." *Id*. Notwithstanding this summary assertion, Petitioner submits that the foregoing conclusion is incorrect or, at a minimum, debatable.

Without rehashing Petitioner's entire argument on this issue, the gist of Petitioner's claim is that had trial counsel conducted a reasonable and proper investigation of mitigation

information that may have been utilized in connection with the penalty hearing, trial counsel would have learned of the extremely damaging testimony the prosecution elicited from witnesses called by Petitioner's trial counsel during the penalty phase. *See* Petitioner's Opening Brief In Support Of His Third Amended Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (D.I. 105). As a result, the prosecution was able to seize upon the testimony elicited on cross-examination and lump together Petitioner with his co-defendants, individuals who had histories of violence. Although Petitioner's situation was dramatically different from that of his co-defendants, Petitioner was inextricably linked to his co-defendants in the eyes of the jury during the joint penalty hearing. To Petitioner's detriment (and prejudice), the jury was presented an image of *three* extremely violent defendants despite Petitioner's criminal history, which did not evidence a pattern of violent behavior. *Id.*

Central to the foregoing claim is that trial counsel did not reasonably conduct any form of meaningful mitigation investigation – an issue Respondents readily acknowledge is worthy of a certificate of appealability given the Supreme Court's grant of review in *Rompilla v. Beard*, 355 F.3d 233 (3d Cir.), *cert granted*, 125 S.Ct. 27 (2004). *See* Response at 8. Thus, because this issue (i.e., the extent of counsel's duty to investigate mitigation evidence) is at the heart of Petitioner's claim that trial counsel should have sought to have the penalty hearing severed, this Court should issue a certificate of appealability.

Additionally, Petitioner submits that a further and independent basis warrants the issuance of a certificate of appealability. This Court's Opinion does not reference or address the Supreme Court's recent pronouncement on counsel's duty to investigate mitigation evidence, a case which bears a striking resemblance to this case (both in terms of facts and issues presented).

4

*See Wiggins v. Smith*, 539 U.S. 510 (2003).[2] The Respondents, in opposing the issuance of a COA, fail to identify *Wiggins* as being recent Supreme Court jurisprudence on the very issue at hand. Petitioner respectfully submits that an analysis of Outten's case in light of *Wiggins* could certainly lead reasonable jurists to debate whether the outcome of the petition should have been different or that the issues are deserving of further, appellate analysis. At a minimum, Petitioner submits that, since the two mitigation claims are intertwined and since *Wiggins* and *Rompilla* bear sufficient similarities, any doubt should be resolved in Petitioner's favor. *See Barefoot*, 463 U.S. at 880.

    3.    **Failure to Prepare an Intelligent and Cohesive Trial Strategy.** In ruling that Outten could not establish "prejudice" under *Strickland,* the Delaware Supreme Court observed: "The Superior Court held that Outten could not show his counsel's performance was deficient, and that because the points he wanted "made to the jury were made" he failed on the prejudice prong as well." *Outten v. State,* 720 A.2d 547, 557 (Del. 1998). While agreeing with the state court findings in this regard, this Court additionally observed that trial counsel formulated its tactical decision well in advance of trial. The Court noted that the trial strategy was supported by an investigation of potentially supportive witnesses "only weeks before the mid-January 1993 trial start date." (D.I. 113, p.46).

    In making *Slack's* threshold determination, it is at least "debatable" that the Delaware Supreme Court's determination was a "reasonable" application of *Strickland's* "performance" and "prejudice" prongs. Put differently, it is at least "debatable" that the Delaware Supreme Court's determination was a "a reasonable determination of the facts." *Strickland* requires that

---

[2] The United States Supreme Court decided *Wiggins* on June 26, 2003 and thus only after Petitioner completed and filed his Opening Brief in Support of His Third Amended Petition for Writ of Habeas Corpus. Petitioner raised and addressed *Wiggins* in his Reply Brief in Support of His Third Amended Petition for Writ of Habeas Corpus.

trial counsel perform a thorough and independent investigation <u>prior</u> to the formation of a final trial strategy.

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.
>
> . . . counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment.

*Strickland*, 466 U.S. at 690-91.

Here, the evidence of trial counsel's "pretrial" investigation, revealed an impromptu defense loosely formed at the eleventh hour. While an investigator was retained nearly a year before the start of the trial, the investigator was not called into service until weeks before the capital murder trial began. Moreover, trial counsel's "investigation" in support of its trial strategy incorporated evidence and testimony that was developed after the trial had already begun. Reasonable jurists could debate the legal sufficiency of trial counsel's pretrial investigation. Reasonable jurists could conclude that, based upon the undisputed facts in this case, trial counsel's formation of "strategy" trumped their duty to investigate. Instead of conducting the kind of thorough investigation called for by prevailing professional norms, and then deciding what strategy to pursue, defense counsel performed a cursory review of the evidence, chose not to investigate at all, and then made last minute efforts to mount a defense.

    4.    **Failure to Object to Impermissible Comments Regarding Lack of Remorse.** In resolving this particular claim, this Court concluded that the state court determinations were neither contrary to, nor involved an unreasonable application of clearly established law. This Court

additionally concluded that Outten has failed to establish that his trial counsel violated either of the *Strickland* prongs. Petitioner asserts that it is "debatable" whether trial counsel's "tactical decision" not to object is supportable as a matter of law. Had trial counsel been familiar with the Third Circuit's capital jurisprudence, they would certainly have been aware of *Lesko v. Lehman*, 925 F.2d 1527 (3d Cir. 1991), in which the sentence of death was set aside on the basis of the prosecutor's remarks. Reasonable jurists could debate whether a sound trial strategy would ever include failing to make a constitutional objection to a prosecutor's improper comment. *Cf. Combs v. Coyle,* 205 F.3d 269, 286 (6th Cir.), *cert. denied*, 531 U.S. 1035 (2000) ("no possible strategic reason" for counsel's failure to object to prosecutor's improper closing argument); *Freeman v. Class,* 95 F.3d 639, 644 (8th Cir. 1996) (no "reasonable tactical basis" not to object to prosecutor's comments on defendant's post-arrest silence). Notwithstanding the Respondents' hypothetical explanation for trial counsel's failure to object (i.e., so as not to draw attention to Petitioner's actual failure to express remorse), reasonable jurists could conclude that a properly timed objection may have terminated the penalty phase or may have resulted in an immediate admonition to the jury.

      Likewise, it is at least "debatable" whether the failure to object meets the prejudice prong of *Strickland*. To the knowledge of the undersigned counsel, no federal appellate court has specifically addressed several of the issues implicated by this claim: first, whether the prosecutor's particular comments may be considered a "fair response" to, or a permissible argument regarding, the "credibility" of Petitioner's autobiographic summary; and second, whether, *Lesko* should be extended to include prosecutorial comments made in response to <u>allocution</u>, and not simply limited to comments following sworn testimony. The Respondents maintain that this Court's "clear rejection of Outten's premise" renders the conclusion not debatable. While respecting the Court's decision, the Petitioner nevertheless asserts that, in view of the noted similarities between the facts in *Lesko* and *Outten,* and in the absence of appellate review on this important matter, debate can and should proceed and, moreover, the matter cannot be deemed to be conclusively resolved.

5.  **The Delaware death penalty statute claims.**  Petitioner has asserted two related, but not mutually dependent, claims regarding the Delaware death penalty law in effect at the time of his trial, conviction and sentence.  The first of these claims -- i.e., the constitutionality of the death penalty statute in light of *Ring v. Arizona*, 536 U.S. 584 (2002) -- appears to have been finally resolved and foreclosed by the Supreme Court's recent decision in *Schriro v. Summerlin,* 124 S.Ct. 2519 (2004).  Petitioner's second ("*Caldwell*") claim against the prevailing statute was not disposed of by *Schriro,* or by any other federal appellate court to Petitioner's knowledge.  In fact, while the *Caldwell* claim now at hand was born out of the Supreme Court's decision in *Ring,* the *Caldwell* rule itself predated *Ring* and is, therefore, unaffected by *Schriro*. As the Respondents correctly point out, the Petitioner's specific *Caldwell* argument does not appear to have been addressed by this Court. D.I. 123, p. 11.

In *Caldwell v. Mississippi*, 472 U.S. 320 (1985), the Supreme Court held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere. *Id*., 472 U.S. at 328-329.  *See also Riley v. Taylor,* 277 F.3d 261, 297 (3d. Cir. 2001)("For the jury to see itself as advisory when it is not, or to be comforted by a belief that its decision will not have effect unless others make the same decision, is a frustration of the essence of the jury function.")  Petitioner's jury was told, consistent with the statutory mandate, that they were functioning as an "advisory jury" -- they were merely making a recommendation, and the judge would have the final say as to the existence of a statutory aggravating circumstance and whether a death sentence would be imposed.  To be clear, the jury was misled: the jurors were told individually and *en masse* that the determination of whether or not the facts existed which would make Petitioner eligible for the death penalty would be made by the court.  They were not told that their guilt phase verdict *would* definitively establish Petitioner's eligibility for the death penalty. They were not told that a guilty verdict *would* establish a statutory aggravating circumstance that would make Petitioner

8

eligible for a sentence of death, rather than life without parole. Thus, the jury was told, in so many words, that their "verdict" did not count. Can such an admonition be squared with the requirement in *Ring* that the jury must be given the "final say" on the question of the existence of a statutory aggravating circumstance – a finding without which a death sentence may be imposed?

Petitioner submits that reasonable jurists could certainly debate this issue, especially since the issue appears to be unaffected by *Schriro*. Petitioner asserts that he has, in fact, presented a valid claim of the denial of a constitutional right: specifically, that his death sentence cannot constitutionally rest on findings made by his "advisory jury" (after they were repeatedly told by the judge that Petitioner's eligibility to receive a death sentence would *not* be definitively established by their "recommendation").

**WHEREFORE**, for the reasons and upon the authorities set forth herein, the Petitioner Respectfully submits that this Court should issue a certificate of appealability on each of his claims.

        /s/ **JOHN P. DECKERS**
        John P. Deckers (I.D. # 3085)
        800 N. King Street, Suite 302
        Wilmington, DE 19801
        (302) 656-9850

        -and-

        /s/ **RICARDO PALACIO**
        Ricardo Palacio (I.D. #3765)
        ASHBY & GEDDES. P.A.
        222 Delaware Avenue, 17th Floor
        P.O. Box 1150
        Wilmington, Delaware 19899
        (302) 654-1888

        Attorneys for Petitioner

Dated: April 12, 2005

**CERTIFICATE OF SERVICE**

I, John P. Deckers, counsel for Petitioner, do hereby certify that on this 11h day of April, 2005 I electronically filed the attached document (Petitioner Jack Foster Outten's Reply To Respondents' Memorandum In Response To Application For Certificate Of Appealability) with the Clerk of the District Court using CM/ECF which will send notification of the filing to the following registered participants:

| | |
|---|---|
| Loren C. Meyers, Esquire<br>loren.meyers@state.de.us | Thomas E. Brown, Esquire<br>thomase.brown@state.de.us |

Deputies Attorney General
Department of Justice
820 N. French Street, 7th Floor
Wilmington, DE 19801

/s/ **JOHN P. DECKERS**
John P. Deckers, Esquire (#3085)
800 N. King Street
Suite 302
Wilmington, DE 19801
(302) 656-9850
Attorney for the Petitioner